IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TANYA BEASLEY o/b/o J.F.                                           PLAINTIFF

VS.                                       CIVIL ACTION NO. 3:10cv622-DPJ-FKB

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY                                                 DEFENDANT

## REPORT AND RECOMMENDATION

### I. Introduction and Procedural History

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration. The Commissioner denied the Title VI application of Tanya Beasley on behalf of her son, J.F. a preschooler. Presently before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for an order affirming the Commissioner's decision. Having considered the motions and briefs, the undersigned recommends that Plaintiff's motion be denied and that the Commissioner's motion be granted.

J.F. who was born on March 30, 2003. Plaintiff's application, protectively filed on October 10, 2007, alleged an onset date of October 4, 2007, and disability due to Attention Deficit Hyperactivity Disorder (ADHD), Oppositional Defiant Disorder (ODD), and urinary incontinence. Her application was denied by the Social Security Administration both initially and on reconsideration, after which she requested a hearing before an administration law judge (ALJ). Following the hearing, the ALJ issued a decision on March 9, 2010, finding that J.F. was not disabled as of that date. Plaintiff sought review

by the Appeals Council, which declined review. Plaintiff then brought this appeal.

## II. Evidence

J.F.'s medical records reveal that in 2006, he was in a motor vehicle accident and sustained a cerebral contusion, bilateral femur fractures, and a left hip fracture. He underwent surgical placement of plates in his hips and legs for the fractures  The plates were removed approximately two years later. There is no indication in the medical record of any further problems from these injuries .

J.F. underwent a psychological evaluation by Donald Raggio, Ph.D. for possible ADHD in May of 2007, when he was four years old. At the evaluation, Plaintiff reported a history of aggressive behavior. Testing revealed J.F. to be of average intelligence. Dr. Raggio concluded that J.F.'s behavioral history and psychological testing indicated symptoms associated with ADHD, combined type, and that his behavioral history was highly suggestive of ODD. He referred J.F. for behavioral counseling. (R. 157-59).

J.F. began treatment at Warren-Yazoo Mental Health Center (Warren-Yazoo) in September of 2007. Plaintiff cited a history of hitting and biting adults, fighting with other children, spitting, aggressive behavior toward animals, two attempts to burn the house down, and burning a chair. On October 4, 2007, he was evaluated by Dr. Khanna-Arora at Warren-Yazoo. Dr. Khanna-Arora observed that J.F. had difficulty remaining still during the evaluation, moving about the room and  opening and touching things. She described his speech as difficult at times. Dr. Khanna-Arora diagnosed adjustment disorder with disturbance of conduct, rule out ADHD, and began a trial of Ritalin. (R. 164-65). One month later, medication had yielded an improvement in behavior, although he continued to

have difficulty following directions.  (R. 280).

In April of 2008, J.F. transferred from Warren-Yazoo to Weems Community Mental Health Center, where he underwent regular treatment for a year.  At the initial evaluation, his mother complained of hitting, spitting, pushing and biting his siblings, bossiness with other children, and an irritable mood.  She also reported he had killed the dog by putting it in a cooler because he did not want to play with it.  The examiner observed that during the evaluation, J.F. was hostile, ran around the office, and threw a tantrum.  The examiner rated J.F.'s concentration as not intact and judgment and insight as impaired.  Diagnosis was ADHD, combined type, and ODD.  He was prescribed Metadate.  (R. 247-49).  Weems treatment notes over the next several months indicate some improvement, especially at school.  However, in February of 2009 it was noted that J.F. stayed in trouble, and insight and judgment were poor.  (R. 236).   March 2009 notes indicate problems at school, hyperactive behavior, poor-to-fair insight, and fair judgment and reliability.  (R. 235).  Testing at the University of Mississippi Medical Center during this same time period revealed a composite high average intelligence, and average to high average academic achievement.  (R. 268-690).

In May of 2009 J.F. began counseling at Pine Belt Mental Healthcare.  Treatment notes over the subsequent two months indicate that he did well when compliant with medication:  During treatment sessions he participated and stayed focused on activities for up to fifteen minutes, stayed seated for an activity for over twenty minutes, and followed instructions well.  (R. 299-300).  A conference with school staff in August of 2009 indicated that he was not doing well and was having trouble with attention and

3

distractions. There was concern that medication was losing effectiveness. (R. 294).
Notes from an August 31, 2009, treatment session indicate that he had been paddled twice since the beginning of school for anger outbursts, kicking teachers, not completing work, and defiant behavior. (R. 292). At the end of September, however, the school counselor reported to Pine Belt staff that the school staff was not having many behavioral problems with J.F. (R. 290). Generally, treatment notes indicate that J.F.'s behavior was better at school than at home. (R. 282-90). Notes dated shortly before the ALJ hearing state that J.F. had some difficulty with attention and hyperactivity but that this was being managed well with medication. (R. 282-84).

      J.F.'s medical history is also significant for urinary incontinence. As a toddler, this was interpreted as merely a failure in toilet training. However, when the condition did not improve with age, he was evaluated in 2008 at the University of Alabama at Birmingham. Examination revealed that J.F. had only one kidney with mild left hydronephrosis. A voiding cystourethrogram was normal. The examining physician noted several risk factors for urinary incontinence–constipation, ADHD, and excessive caffeine intake. He recommended an increase in dietary fiber and the elimination of caffeine. (R. 228). After a month on the regimen, J.F. was experiencing no daytime enuresis, and bed-wetting had decreased. (R. 246). However, this improvement did not last, and in July of 2009 he was evaluated at the Urology Center for continued problems. His mother reported that he averaged only three dry nights per month and that he experienced frequent urination and constant wetting of his clothes. He was diagnosed with overactive bladder with urge incontinence and placed on Ditripan. (R. 256). This medication was apparently effective:

4

at his followup appointment, he was experiencing no bed-wetting and fewer accidents during the day. (R. 255). The records indicate that at the time of the hearing, J.F. was still having accidents during the day, but these occurred mostly at home. (R. 283).

Plaintiff testified at the hearing concerning her son's behavior problems and difficulties with urinary incontinence. She described aggressive behavior towards other children and animals. Plaintiff stated that J.F. was repeating kindergarten and was doing well in school, with the exception of a recent incident during which he had attempted to throw his shoes at his teacher. Plaintiff attributed his recent improvements in behavior to an increase in medication. She testified that he had difficulties staying on task and would do his homework or clean his room only with constant supervision.

Plaintiff explained that because of his fears of urinary accidents, J.F. prefers not to be around other people. However, she acknowledged that medication has helped with J.F.'s incontinence. She estimated that he has about four accidents a day, but that these occur primarily at home rather than at school.

### III. ANALYSIS

Disability claims by children are determined using a three-step sequential analysis. *See* 20 CFR. 416.924. At step one, the ALJ determines whether or not the claimant is engaged in substantial gainful activity. 20 CFR. § 416.924(b). If not, the ALJ moves on to step two, which is a determination as to whether the child suffers from a severe impairment or a combination of impairments that is severe. 20 CFR. § 416.924(c). A "severe" impairment is one which causes more than minimal functional limitations. *Id.* If the ALJ determines that the child suffers from a severe impairment, or a combination of

5

impairments that is severe, the analysis continues to step three, which involves a determination as to whether the child's impairment meets, medically equals, or is the functional equivalent of an impairment listed in Appendix 1, Subpart P, Regulations No. 4 (the Listing of Impairments).  20 CFR § 416.924(d).  If the ALJ determines that the claimant's impairment is not a listed impairment and is not medically equal to an impairment, the ALJ must make an assessment of whether the impairment is functionally equivalent to a listed impairment.

Functional equivalency is determined by assessment of all the functional limitations caused by the child's impairment or combination of impairments.   20 CFR 416.926a.  This assessment requires the ALJ to analyze the child's ability in six "domains," which are "broad areas of functioning intended to capture all of what a child can or cannot do."  20 CFR. 416.926a(b)(1).  The six functional equivalency domains are (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  *Id.*  A finding of functional equivalence is made only if the child has "marked" limitations in two domains or an "extreme" limitation in one domain.  20 CFR § 416.926a(d).  A "marked" limitation is one which seriously interferes with the child's ability to independently initiate, sustain or complete activities.  20 CFR § 416.926a(e)(2).  It is "more than moderate but less than extreme."  *Id.*  An "extreme" limitation is a limitation which interferes very seriously with these abilities. 20 CFR § 416.926a(e)(3).   When deciding whether a child has a marked or extreme limitation, the ALJ must consider the child's functional limitations in all areas, including their interactive and cumulative effects.

20 C.F.R. § 416.926a(c).

In his decision, the ALJ found that J.F. has the severe impairments of ADHD, ODD, incontinence issues, and overactive bladder. He determined that these impairments do not meet or medically equal the requirements for a listed impairment. The ALJ continued on in the sequential process to assess whether J.F.'s impairments are functionally equivalent to listed impairments by analyzing J.F.'s ability to function in each of the six domains. The ALJ found that J.F. had no limitations in domains one, two and four, *i.e.*, acquiring and using information, attending and completing tasks, and moving about and manipulating objects. As to the remaining three domains, the ALJ found that J.F. has less than marked limitations in interacting and relating to others, caring for himself, and health and physical well-being. Because the ALJ did not find J.F.'s limitations to be marked in two domains or extreme in one domain, the ALJ concluded that J.F. is not disabled within the meaning of the Social Security Act.

In reviewing the Commissioner's decision, this Court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)). If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d

7

208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

In her brief in support of her motion for summary judgment, Plaintiff contends that the Commissioner's decision is not supported by substantial evidence. Her specific attack on the Commissioner's decision is two-fold: First, she argues that the ALJ failed to consider the functional limitations caused by all of J.F.'s impairments. Second, Plaintiff argues that the ALJ erred in failing to consider the evidence of record concerning J.F.'s GAF scores.[1]

Plaintiff challenges the ALJ's findings as to J.F.'s limitations in each of the six domains. His argument as to the ALJ's findings in the first domain–that J.F. has no limitation in the ability to acquire and use information–focuses on the fact that J.F. repeated kindergarten. Plaintiff argues that the ALJ failed to consider this fact as it relates to J.F.'s abilities or to inquire further as to the reason why J.F. did not progress to first grade. The undersigned rejects this argument. It is common knowledge that children are frequently held back from starting first grade for many different reasons. Given the fact that J.F.'s achievement test scores were high and that nothing else in the record indicates that J.F. had any problems whatsoever in acquiring and using information, it cannot reasonably be concluded that J.F.'s repeating of kindergarten

---

[1]The Global Assessment of Functioning (GAF) is a standard measurement of an individual's overall level of functioning on a scale of 1-100, with 100 representing "superior functioning." American Psychiatric Institute, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 34 (4th ed. 2000). The GAF is the Axis V segment of the DSM's multiaxial system for assessment.

should have alerted the ALJ to some problem in this area and that it demanded further inquiry.

Plaintiff's challenge to the ALJ's findings of "less than marked" limitations in the domains of ability to care for oneself and health and physical well-being is focused upon J.F.'s enuresis. The medical records indicate that while J.F. had significant problems with both bed-wetting and daytime enuresis prior to placement on Ditropan, his condition improved with medication. Urology Center notes of August 27, 2009 indicate that he was having no nocturnal enuresis and fewer accidents during the day. (R. 255). By January 8, 2010, he was still experiencing some daytime enuresis, but his mother reported that this occurred mostly at home. (R. 283). The undersigned concludes that this evidence supports a finding of a less than marked limitation, *i.e.*, that incontinence does not seriously interfere with J.F.'s ability to initiate, sustain, or complete activities.

The ALJ's finding that J.F. has a less than marked limitation in his ability to interact with and relate to others is also supported by substantial evidence. The record indicates medication has been generally effective in reducing J.F.'s problems in this area, although he continued to have behavioral problems periodically. While some defiant behaviors were reported at the beginning of the school year in 2009, by the end of September the school counselor reported that he had not had many behavioral problems. Generally, the later records indicate that J.F.'s behavior at school had improved; rather, his behavior at home presented the greater difficulties, and the mother was instructed to use discipline at home that was consistent with what he was receiving at school.

The evidence concerning his interactions with siblings and peers also shows

9

improvement with time.  The early records show significant problems fighting with other children, and in an October 2008 therapy session, he stated that he had no friends and did not want any.  Later notes, however, indicate that he played well with his siblings and that he had one good friend.  Although Plaintiff testified that J.F. had difficulties with his siblings, the ALJ was free to discount this testimony, especially since it conflicted with other reports in the records.

      The ALJ's finding regarding J.F.'s ability to attend to and complete tasks, on the other hand, is problematic.  The record indicates that J.F.'s performance in this area has been variable.  After he began medication, it was noted that his attention span had improved.  May 21, 2009, notes from Pine Belt state that he was able to focus on an activity for up to 15 minutes, and on May 28, 2009 he stayed seated during an entire activity, focusing and following instructions well.  Two months later he demonstrated the same ability to focus and follow instructions.  However, in August of 2009, he was having problems with attention and distractions at school and was not completing his work.  Pine Belt notes from an October 2009 assessment at Pine Belt stated that he had difficulty with attention and hyperactivity.  Hyperactivity and problems with attention were again noted in January of 2010, but the notes went on to state that these conditions were being managed well with medication.  Throughout the notes there are references to problems with impulse control.  Clearly, J.F.'s ADHD, even when treated,  has resulted in some level of limitation in his ability to attend to and complete tasks.  Furthermore, in the portion of his opinion concerning J.F.'s ability to interact and relate with others, the ALJ states that J.F. "may experience some difficulty in completing his assignments in a timely

10

manner." For these reasons, the undersigned finds that the ALJ's determination that J.F. has *no* limitations in this area is not supported by substantial evidence.

Nevertheless, reversal is not warranted because Plaintiff cannot show any prejudice. Given the AJL's findings as to J.F.'s limitations in the remaining domains, nothing less than a finding of an extreme limitation in the area of attending to and completing of tasks could result in a finding of disability. The record does not contain substantial evidence to support such a finding. The undersigned concludes that the ALJ's finding that J.F. had no limitations in this area was harmless.

Finally, Plaintiff attacks the ALJ's failure to consider the opinion evidence in the record concerning J.F.'s GAF scores. Treatment notes from Weems reflect GAF scores in the range of 45 to 56. A GAF score of 41–50 indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) (DSM-IVTR). A GAF score of 51–60 indicates "[m]oderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." *Id.* Plaintiff argues that the ALJ erred in failing to consider these opinions, explain the weight given to them, or provide reasons for rejecting them.

An Axis V score is nothing more nor less than one piece of relevant evidence to be considered along with all other relevant evidence in the record. Indeed, the Commissioner has stated that GAF scores have no "direct correlation to the severity

11

requirements of the mental disorders listings." *See* 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000).  The ALJ was not required to single out this piece of evidence and discuss it, and his failure to do so provides no basis for reversal or remand.

## IV. Conclusion

For these reasons, the undersigned recommends that Plaintiff's motion be denied and that the Commissioner's motion be granted.  The parties are hereby notified that failure to file written objections to the findings and recommendations contained in this report within fourteen days from the date of being served with a copy hereof will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; *Douglass v. United Service Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Respectfully submitted, this the 12th day of July, 2012.

                    /s/ F. Keith Ball
                    UNITED STATES MAGISTRATE JUDGE